Douglas J. McGill, Esq.
**WEBBER MCGILL LLC**
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
(973) 739-9559
dmcgill@webbermcgill.com
*Attorneys for Creighton Bloyd*

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 APR 21  A II: 23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE:                                      }
                                            }
UNITED STATES OF AMERICA                    }
                                            }      **Case No. 2:20-cr-01028**
v.                                          }
                                            }
PURDUE PHARMA L.P. et al,                   }

## NOTICE OF MOTION TO REQUIRE CONFERENCE
## UNDER THE CRIME VICTIMS RIGHTS ACT

**PLEASE TAKE NOTICE** that Creighton Bloyd ("Movant") by and through his undersigned counsel, will apply to the Honorable Madeline Cox Arleo, U.S.D.J., in the United States District Court for the District of New Jersey, located at the Martin Luther King, Jr. Federal Courthouse, 50 Walnut Street, 3rd Floor, Newark, New Jersey 07102, on **May 4, 2026** or as soon thereafter as counsel may be heard, for entry of an order requiring the attorney for the United States in this case confer with him and/or his counsel regarding restitution under the Mandatory Victim Restitution Act and Crime Victims Rights Act.

**PLEASE TAKE FURTHER NOTICE** that Movant will rely upon the Motion and any reply papers which may be filed, as well as arguments of counsel on the return date of the Motion (if permitted by the Court). A proposed form of order granting the relief sought in the Motion is also submitted herewith.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall (i) be in writing; (ii) state with particularity the basis of the objection; and (iii) be filed with the Clerk of the Court.

**WEBBER MCGILL LLC**
100 E. Hanover Ave., Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
dmcgill@webbermcgill.com


By: *s/ Douglas J. McGill*
    Douglas J. McGill


April 20, 2026

Douglas J. McGill, Esq.
**WEBBER MCGILL LLC**
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
(973) 739-9559
dmcgill@webbermcgill.com
*Attorneys for Creighton Bloyd*

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 APR 21  A 11: 23

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

IN RE:                                          }
                                                }
UNITED STATES OF AMERICA                        }
                                                }      **Case No. 2:20-cr-01028**
v.                                              }
                                                }
PURDUE PHARMA L.P. et al,                       }

### MOTION TO REQUIRE CONFERENCE
### UNDER THE CRIME VICTIMS RIGHTS ACT

Creighton Bloyd respectfully moves this Court to enter an order requiring the attorney for the Government in this case to confer regarding restitution required under the Mandatory Victims Restitution Act and duties owed under the Crime Victims Rights Act. In particular, Bloyd seeks to confer with the government about means to enable restitution in the form of subsidies for future medical care provided to Purdue's victims. These means employ commonly used technologies used every day to assure payment for prescription medication and other treatment. Granting this motion would not unnecessarily delay the resolution of this matter. Bloyd would only seek restitution in the form of subsidized medical treatment paid from the funds that the Government currently plans to divert to the United States Treasury. He does not anticipate demanding such restitution from funds that the defendant currently plans to pay into trusts established under the

1

defendant's plan of reorganization confirmed by the Bankruptcy Court for the Southern District of New York. In support of this motion, Bloyd states:

1.      Bloyd submitted a Victim Impact Statement to this Court, a true and correct copy of which is attached hereto as Exhibit A. Bloyd suffers from opioid use disorder ("OUD"). Bloyd used opioids diverted from Florida to East Tennessee, where defendant was a college student, pursuant to a scheme made possible by the defendant's crimes in this case, i.e., the failure of the defendants to establish a compliance program adequate to identify diversion of opioids from fraudulent prescriptions to persons addicted to or vulnerable to addiction to synthetic opioids. This scheme was described in an article titled "The Dukes of Oxy" published by Rolling Stone Magazine in 2016. The opioids in question included OxyContin, a drug manufactured by defendant.

2.      Using medicine assisted therapy ("MAT"), Bloyd is currently in recovery from OUD. As part of his MAT, Bloyd takes sublingual suboxone by prescription.

3.      Currently, Bloyd has insurance that covers some of the expense associated with his MAT, but he still has to make co-payments for prescription medications. In the past, Bloyd has had to pay the entire cost of his MAT out of pocket and he may have to do so again, depending on the availability of healthcare coverage.

4.      Under the MVRA, a criminal defendant must

in the case of an offense resulting in bodily injury to a victim—

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

5.      *Bloyd is not now and does not anticipate asking the Government or the defendant to pay him cash to spend as he wishes*. Instead, Bloyd hopes to persuade the Government that the

2

Government require certain funds to be paid by the defendant (but now earmarked to divert to the Government) to serve as restitution for at least part of the costs of the items covered by § 3663A(b)(2)(A).

6.    When Purdue agreed to plead guilty in this case, the Government expressly stated that it would not seek restitution for victims under the MVRA, because such restitution was not administratively feasible.    In fact, such restitution is administratively feasible and is not "complex."  Using current payment technology already deployed every day in healthcare settings, payment cards and other commonly used payment arrangements can allow victims to purchase their prescription medication (or, if appropriate, other healthful products and services) from pharmacies (including pharmacies operating in or as methadone clinics).    These technologies could not only facilitate the administration of restitution, but would also minimize or even altogether eliminate potential diversion of restitution benefits.

7.    Counsel for Bloyd attempted to confer with Alina Habba, who was serving as attorney for the Government in this matter when counsel contacted her, but did not receive a response. The attempted communication is attached hereto as Exhibit B.  This attempt occurred before any one questioned whether Ms. Habba could lawfully serve as U.S. Attorney for New Jersey.  Until very recently, it has been unclear whether anyone would be recognized as lawfully serving as the U.S. Attorney for New Jersey.

8.    Under the Crime Victims Rights Act, 18 U.S.C. § 3771(a)(5), a victim has the "reasonable right to confer with the attorney for the Government in the case."  A victim also has the "right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). While the MVRA may not provide a private right of action to victims, the Crime Victims Rights Act does at least guarantee them the right to be heard.

3

9.    Under 18 U.S.C. § 3771(d)(3), the Court may enforce the rights established under 18 U.S.C. § 3771(a)(5) and (6).  At 18 U.S.C. § 3771(d)(3), the CVRA states:

> The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure. The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed.

10.    Instead of providing restitution under the MVRA, the Government and Purdue agreed that Purdue would pay over $2 billion in forfeitures and other sums. Under the plea agreement, the Government would give Purdue credit, up to $1.75 billion, against the amount forfeited in this Court for sums that Purdue paid into various trusts established pursuant to a plan of reorganization in Purdue's bankruptcy case pending in the United States Bankruptcy Court for Southern District of New York (White Plains Division). Two hundred twenty five million dollars would be paid into and retained by the United States Treasury.  Bloyd contends that Purdue's victims should have restitution (in the form of payments for medical care) from the $225 million otherwise payable to the U.S. Treasury.

11.    Under the original plan of reorganization submitted and confirmed in Purdue's bankruptcy case in the White Plains Division of the Southern District of New York, confirmation of the plan was contingent upon the finalization of this matter. Under the current plan, confirmation is not contingent upon a judgment of conviction in this case, but the effective date of the confirmed plan is contingent.  The relief sought in this case would not interfere with the bankruptcy case. In any event, the court presiding over the bankruptcy case and the Debtor in the bankruptcy case have emphasized that Bloyd and similarly situated persons should vindicate their rights under the

4

MVRA and the CVRA in this Court, not the bankruptcy court. *In re Purdue Pharma L.P.*, 633 B.R. 53, 68 (S.D.N.Y. 2021).

12.     While Bloyd presently has access to insurance covering part of the cost of his MAT, many of Purdue's victims either have no coverage at all or have coverage that has historically been made available by reason of the Affordable Care Act (ACA), it is a matter of which the Court may take judicial notice that such coverage under made available by reason of the ACA is in jeopardy, since subsidies for the ACA have expired.

13.     In light of the recent efforts of the United States to revoke funding of grants and programs made available through the Substance Abuse and Mental Health Services Administration (SAMHSA), it would not be reasonable to assume that the United States would use money diverted from restitution in this case to subsidize medical are in the manner contemplated and required under the MVRA. While that revocation was reversed, the fact that the revocation occurred at all demonstrates that any funding for initiatives to combat opioid use disorder may disappear literally overnight if administrative priorities change.

14.     On April 18, 2026, President Donald Trump released an executive order titled "Accelerating Medical Treatments for Serious Mental Illness." By refusing restitution to victims in this case, the government undermines the intent of that executive order, which encourages treatment that is generally uninsured. The restitution required by law would give victims more money to pay for the treatment encouraged by the executive order.

15.     Moreover, restitution required under the MVRA is not merely a gratuitous civil benefit that the Government may impose or ignore on depending on political aims, but is instead a critical component of the sentencing process. *Ellingburg v. United States*, _____ U.S._____, 223 L. Ed. 2d 446 (Jan. 20, 2026).

5

16.    While this Court recently entered an order allowing victims to contact the United States by means of a web page whose link appeared in the order, the link in the order was "dead," meaning that clicking on the link or pasting it to a browser did not cause a web browser to locate an actual web page with information. The link in the order is the same as the link appearing in the draft order. Requiring the Government to confer with Bloyd would supplement the Government's otherwise problematic efforts to reach victims.

17.    Notifying victims by means of a web page is inadequate for victims who are incarcerated. Notice to incarcerated victims requires direct mail or facility level publication, neither of which appears to have been attempted here. The United States Department of Justice has estimated that as many as 20% of all people incarcerated in State prisons have suffered opioid use disorder while they were incarcerated. Many of these prisoners now have access to MAT for their opioid use disorders, but the access to medication stops when the prisoners are released. Establishing a program to make the medication available to prisoners upon their release could be done in a matter of days, thus reducing the risk that prisoners leaving custody will relapse and/or overdose after abruptly losing access to their medications. Bloyd is not a prisoner, but is related to at least one person who has struggled with opioid use disorder in prison and after release. Bloyd himself has suffered injury in fact by reason of the lack of treatment available to them.

**WHEREFORE**, Bloyd respectfully requests this Court to enter an order, substantially in the form submitted herewith, requiring the attorney for the Government to confer with him and/or his counsel regarding restitution under the MVRA and CVRA, and award such other and further relief that the Court deems just and proper, together with attorney's fees and costs.

**WEBBER MCGILL LLC**
100 E. Hanover Ave., Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
dmcgill@webbermcgill.com


By: *s/ Douglas J. McGill*
    Douglas J. McGill


April 20, 2026

# EXHIBIT A

*UNITED STATES v.* Purdue Pharma L.P.

**COURT DOCKET NUMBER:** 2:20-cr-01028-MCA

VICTIM NAME: Creighton Bloyd

**Please select one of the following as it relates to your statement that follows:**

☐ I want my statement to be PRIVATE (only accessible to the court, the government, and the defendant)

☑ I want my statement to be PUBLIC (made publicly available on the court docket)

**I would like to be <u>considered</u> to provide an oral statement at the sentencing hearing on April 21, 2026:**

☑ Yes

☐ No

➤ Please note the court has advised that anyone who wishes to make an oral statement <u>must</u> elect to have their statement made public. In addition, the court has determined that it will allow a limited number of individuals to speak at the sentencing hearing. If you are selected to provide an oral statement, you will be informed in advance.

*UNITED STATES v.* Purdue Pharma L.P.

COURT DOCKET NUMBER: 2:20-cr-01028-MCA

VICTIM NAME: **Creighton Bloyd**

## VICTIM IMPACT STATEMENT

*Completing this form is optional and the questions serve as a guide for potential issues that you and/or your family may have encountered as a result of the offense. Please feel free to draft a letter or submit a Victim Impact statement another way instead of using this form.*

How have you and members of your family been affected by this crime? Feel free to discuss how the crime has affected you and/or your family's health and lifestyle.

I was a college student at Maryville College in East Tennessee when I began using OxyContin.   It's hard, maybe even impossible, to overstate how easy it was to buy OxyContin, Percocet, and other opioids in East Tennessee. The drugs were everywhere.  I eventually learned that these drugs came to East Tennessee to from Florida.  An article published in Rolling Stone magazine in 2015 tells the story of how that happened. The title of the article is "The Dukes of Oxy: How a Band of Teen Wrestlers Built a Smuggling Empire." One of the young men mentioned in that story actually sold drugs to me while I was in college in Tennessee. According to the government in this case, the DEA would have caught them, if Purdue Pharma had not defrauded the government into believing that Purdue had a real program to detect what was going on in Florida (and a lot of other places, I'm sure). As it was, in Florida, in East Tennesee, and across the Nation, opioids were diverted to young men and women who, like me, had no idea what they were getting into. Today, I take sublingual buprenorphine (brand name suboxone) to help manage my illness.  I am also in weekly therapy. I have been sober and free from drugs for nearly five years now.

Have you and/or members of your family received counseling as a result of this crime?

☒ Yes  ☐ No

If yes, please explain:

You have to have counseling to maintain a prescription for buprenorphine, the medicine used to treat opioid use disorder. I have found counseling to be very helpful.

*UNITED STATES v.* Purdue Pharma L.P.

COURT DOCKET NUMBER: 2:20-cr-01028-MCA

VICTIM NAME: Creighton Bloyd

### VICTIM IMPACT STATEMENT

If you and/or a family member were a patient of the defendant, did you and/or the family member express any concerns to the defendant in relation to the charged conduct?

☒ Yes   ☐ No

If yes, please explain:

I have filed objections in the Purdue Pharma bankruptcy to object to the defendant's paying the United States money that should subsidize medical care for victims.

Do you believe the defendant began or contributed to you and/or your family member's addiction?

☒ Yes   ☐ No

If yes, please explain:

Did the defendant prescribe or dispense drugs that resulted in death or bodily injury?

☒ Yes   ☐ No

If yes, please explain:

*UNITED STATES v.* Purdue Pharma L.P.

**COURT DOCKET NUMBER:** 2:20-cr-01028-MCA

VICTIM NAME: Creighton Bloyd

**VICTIM IMPACT STATEMENT**

Do you believe the defendant failed to provide necessary care?

☒ Yes  ☐ No

If yes, please explain:

Yes. Instead of providing restitution in the form of subsidized medical care to defray at least part of the costs associated with treating opioid use disorder, the defendant decided to pay that money to the United Staes, whose lax oversight made the whole opioid crisis possible.

Did the defendant bill you and/or your family member's health insurance for unnecessary procedures or procedures that were never performed?

☐ Yes  ☒ No

If yes, please explain:

Have you experienced any of the following reactions to the crime:

☒ Anger  ☒ Anxiety  ☒ Fear  ☒ Grief  ☒ Guilt  ☐ Chronic Fatigue

☒ Sleep Loss  ☒ Addiction  ☐ Appetite Change  ☒ Sickness

☐ Trouble Concentrating  ☒ Financial Stress  ☒ Depression

Please describe any other reactions to the crime committed.

I have been very disappointed in how the Justice Department has ignored restitution.

UNITED STATES v. Purdue Pharma L.P.

COURT DOCKET NUMBER: 2:20-cr-01028-MCA

VICTIM NAME: Creighton Bloyd

### VICTIM IMPACT STATEMENT

Do you feel the defendant is or will be a threat to you, your family, or the community?

☒ Yes ☐ No,

If yes, please explain:
The defendant should not be allowed to avoid its restitution obligations.

What else would you like the Court to know about the defendant or your situation as a result of the crime?

The defendant can make restitution to its victims in the form of subsidies to medical care. I have retained counsel to demonstrate how this is done and have asked to confer with U.S. Attorney Alina Habba last year, but she did not respond. This restitution is possible using the technology employed by pharmacies, merchants, and pharmacy benefit managers every day.

If a victim consents, the Court may also make restitution in services in lieu of money, or make restitution to a person or organization designated by a victim. If you are interested in this option, please explain.

Federal law requires the defendant to make restitution in the form of subsidies to medical care made necessary by defendant's wrongs. Currently the defendant plans to pay $225 million to the United States Treasury. If the money were paid to one of the trusts in the Purdue Pharma bankruptcy pending in New Jersey, or if the money were paid into a trust independent of the bankruptcy, the money could be made available to defendant's victims for the purpose of treating their opiod use disorder and related conditions. This money could be made available by payment devices whose technology made diversion of the money to other purposes practically if not literally impossible. I will be happy to introduce the defendant and the United States to service providers who make these services available every day.

*UNITED STATES v.* Purdue Pharma L.P.

COURT DOCKET NUMBER: 2:20-cr-01028-MCA

VICTIM NAME: Creighton Bloyd

## VICTIM IMPACT STATEMENT

Please list your actual financial losses from this crime. List only those items for which you have not been or do not expect to be repaid. Please attach receipts or other records that document your losses whenever possible. Please differentiate any monies already repaid by a defendant.

I have incurred losses in the form of payments for medical treatment, including rehabilitation and medicine. I am currently out of the country on vacation and do not have ready access to those totals. However, I am most concerned about my future losses, which are the amounts that I (and others like me) have to spend on co-payments for medication, etc. in the future.

Have you been assessed any additional taxes, penalties, or interest by the federal government as a result of this case? If yes, please explain.

No.

Have you or anyone on your behalf initiated civil action against any party as a result of this offense? If yes, please state the case name, docket number and court of jurisdiction.

I filed Adversary Proceeding Adv. Pro. No. 21-07088 (RDD) in In Re Purdue Pharma, in the Bankruptcy Court for the Southern District of New York, White Plains, Case No. 19-23649 (RDD). I complained that the United States should not be able to take victim's restitution.

If you have suffered any other expenses as a result of this crime, please list them below. Include such items as counseling, medical bills, lost income and necessary child care, transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. Please be specific and attach copies of receipts if possible.

See above.

Also, please note that I am presently in Japan for vacation. Therefore, I have instructed my attorney to sign my name below. I have subscribed to international cell phone service but coverage has not been good. I would like to appear by zoom at the sentencing hearing on April 21, 2026, if my mobile service works by then.

*UNITED STATES v.* **Purdue Pharma L.P.**

**COURT DOCKET NUMBER:** 2:20-cr-01028-MCA

VICTIM NAME: **Creighton Bloyd**

## VICTIM IMPACT STATEMENT

Signature: *Creighton Bloyd*

Printed Name: **Creighton Bloyd**

Date: **April 14, 2026**

**CONFIDENTIAL**

United States v. **Purdue Pharma**

Case Number: **2:20-cr-01028-MCA**

The address and telephone contact information provided below will only be provided to the presentence probation officer and the United States Attorney's Office, unless a court order signed by the Judge authorizes the release of this page to the Court and attorney for the defendant.

Printed Name: **Creighton Bloyd**

Signature: *Creighton Bloyd*

Address: c/o Frank Ozment, Attorney At Law

217 Country Club Park, #501

Phone: (hm) 205.413.9973 (wk)

frankozmentlaw@gmail.com

# EXHIBIT B

# FRANK OZMENT

Attorney-at-Law

April 30, 2025

Hon. Alina Habba
United States Attorney
District of New Jersey
970 Broad Street, 7th Floor
Newark, NJ 07102

Re: United States v. Purdue Pharma, LLP, 2:20-cr-01028-MCA-1

Dear Ms. Habba:

I represent Creighton Bloyd and Stacey Bridges, both of whom are recovering opioid use disorder patients whose addictions began with products manufactured by Purdue Pharma. On their behalf, I request that you confer with them pursuant to the Mandatory Victim Restitution Act, in fulfillment of the obligations of your office (and those employed in your office) under the Crime Victims Rights Act.

Under the previous administration's handling of the Purdue criminal and bankruptcy cases, the United States refused to vindicate the restitution rights of recovering patients under the MVRA, ostensibly because doing so would prolong the proceedings. The proceedings were prolonged, but for reasons unrelated to restitution.

Bloyd and Bridges are not eager to interfere with the plea agreement in this matter or the confirmation of the proposed bankruptcy plan, to the extent they can avoid that outcome while vindicating their rights under the MVRA and CVRA. They merely want the United States to relinquish its claim to the $225 million that would otherwise be diverted to the U.S. Treasury from victim restitution, so that money can subsidize medical treatment for victims who timely filed claims in bankruptcy. By email attachment, I have included a brief description of their plan, which includes a sensible way to make sure restitution is not diverted to purposes other than medical treatment.

I and my clients look forward to conferring with you at your convenience. I remain,

Sincerely yours,

Frank Ozment Attorney at Law, LLC

501 – 217 Country Club Park
Mountain Brook, Alabama 35213
205.413.9973

Douglas J. McGill, Esq.
**WEBBER MCGILL LLC**
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
(973) 739-9559
dmcgill@webbermcgill.com
*Attorneys for Creighton Bloyd*

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 APR 21  A 11: 23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

IN RE:                                    }
                                          }
UNITED STATES OF AMERICA                  }
                                          }    **Case No. 2:20-cr-01028**
v.                                        }
                                          }
PURDUE PHARMA L.P. et al,                 }

## ORDER GRANTING CREIGHTON BLOYD'S MOTION TO REQUIRE CONFERENCE UNDER THE CRIME VICTIMS RIGHTS ACT

**THIS MATTER**, having come before the Court by way of the Motion of Creighton Bloyd (the "Motion") to require a conference under the Crime Victim Rights Act; and the Court having considered the papers submitted by the parties and having heard oral argument, if any, and for good cause shown,

IT IS, on this _____ day of _____, 2026

**ORDERED**, that the Motion is GRANTED; and it is further

**ORDERED**, that, within seven (7) days after entry of this Order, counsel for the United States shall confer with Bloyd, and Bloyd's counsel may be present at such conference; and it is further

**ORDERED** that the conference may take place virtually, but the parties may mutually agree to meet in person; and it is further

**ORDERED** that the parties may include at such conference defendant and/or defendant's representatives if they so agree; and it is further

**ORDERED** that Bloyd may present such written material and/or witnesses as may be appropriate to the subject matter of the conference; and it is finally

**ORDERED** that Bloyd and the United States shall file a report (which may be joint) of compliance with this Order not later fourteen (14) days after entry of this Order.

_____
HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

2